UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BIN IBRAHIM,<br>Petitioner,<br>v.<br>TODD BLANCHE, et al.,<br>Respondents. | Case No.: 26cv3847-LL-DDL<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241**<br><br>[ECF No. 1] |

Before the Court is Petitioner Bin Ibrahim's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241. ECF No. 1 ("Pet."). Respondent filed a Return in opposition to the Petition [ECF No. 5], and Petitioner filed a Traverse [ECF No. 6]. For the reasons set forth below, the Court **GRANTS** the Petition.

## I. BACKGROUND

Petitioner Bin Ibrahim is a native and citizen of Ghana who was a "victim of brutal homophobic vigilante violence in Ghana." Pet. ¶ 15. Petitioner entered the United States in May 2023 seeking asylum. ECF No. 1-3 at 3. In August 2023, Petitioner applied for asylum, statutory withholding of removal, and protection under the United Nations Convention Against Torture ("CAT"). Pet. ¶ 17. According to Respondents, Petitioner was apprehended by U.S. Border Patrol agents on January 2, 2026 after entering the United

States from Canada. ECF No. 5 at 2. On January 24, 2026, Petitioner was transferred to Immigration and Customs Enforcement ("ICE") custody at Otay Mesa Detention Center ("OMDC"). Pet. ¶ 18; ECF No. 5 at 2.

On March 18, 2026, an Immigration Judge ("IJ") denied all claims for relief and ordered Petitioner removed to Uganda. ECF No. 5 at 2. Petitioner timely appealed his order of removal to the Board of Immigration Appeals ("BIA"). Pet. ¶ 23.

## II. LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, challenges to immigration-related detention are within the purview of a district court's habeas jurisdiction. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

## III. DISCUSSION

### A. Jurisdiction

Respondent states that as a threshold matter, Petitioner's claims are jurisdictionally barred under 8 U.S.C. § 1252(g). ECF No. 5 at 4–5. Section 1252(g) states that "[e]xcept as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings,

adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g).

The Court finds § 1252(g) does not bar its jurisdiction over Petitioner's claims. The Supreme Court has explained that § 1252(g) does not bar jurisdiction for the "universe of deportation claims" but instead "applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999); *see also Ibarra-Perez v. United States*, No. 24-631, 2025 WL 2461663, at *2 (9th Cir. Aug. 27, 2025) ("The Supreme Court has instructed that we should read § 1252(g) narrowly."). The Supreme Court later reiterated this narrow application of § 1252(g): "We did not interpret this language to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General. Instead, we read the language to refer to just those three specific actions themselves." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (citation omitted). Petitioner is not challenging the commencement of removal proceedings but is instead claiming a lack of legal authority to detain him for a prolonged time without a bond hearing during proceedings. *See Ibarra-Perez*, 2025 WL 2461663, at *2 (noting that a claim based on a lack of legal authority to execute a removal order due to a violation of a court order, the Constitution, INA, or international law, does not challenge the decision or action to execute a removal order). Therefore, § 1252(g) does not limit the Court's jurisdiction in this matter.

**B. Fifth Amendment Due Process Clause**

Petitioner contends that his prolonged detention without a bond hearing violates the Due Process Clause of the Fifth Amendment. Pet. ¶¶ 29–46. Respondents disagree that his detention is unconstitutionally prolonged and argue that there is no due process violation because Petitioner is detained pursuant to § 1225(b)(1), which mandates detention through the conclusion of the removal process, and that is all the process he will receive. ECF No. 5 at 5–10.

The Due Process Clause of the Fifth Amendment provides that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003) (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993)). "At the same time, however, this Court has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Id.* The Ninth Circuit has questioned the constitutionality of certain immigration detention statutes, including § 1225(b):

> We have grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so. Arbitrary civil detention is not a feature of our American government. "[L]iberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755, 107 S. Ct. 2095, 95 L.Ed.2d 697 (1987). Civil detention violates due process outside of "certain special and narrow nonpunitive circumstances." *Zadvydas v. Davis*, 533 U.S. 678, 690, 121 S. Ct. 2491, 150 L.Ed.2d 653 (2001) (internal quotation marks and citation omitted).

*Rodriguez v. Marin*, 909 F.3d 252, 256–57 (9th Cir. 2018) (alteration in original).

The Court agrees with those courts that have found a noncitizen detained under § 1225(b) for a prolonged period without an individualized bond hearing may assert a constitutional right to due process. *See Sadeqi v. LaRose*, No. 25-CV-2587-RSH-BJW, 2025 WL 3154520, at *2 (S.D. Cal. Nov. 12, 2025) ("This Court agrees with the majority position that a petitioner detained under Section 1225(b)(1) may assert a due process challenge to prolonged mandatory detention without a bond hearing."); *Maksin v. Warden, Golden State Annex*, No. 1:25-CV-00955-SKO (HC), 2025 WL 2879328, at *3 (E.D. Cal. Oct. 9, 2025) ("Several courts including the Third, Sixth, and Ninth Circuit, as well as numerous district courts, have found that unreasonably long detention periods may violate the due process clause." (collecting cases)); *Abdul-Samed v. Warden of Golden State Annex*

*Det. Facility*, No. 1:25-CV-00098-SAB-HC, 2025 WL 2099343, at *6 (E.D. Cal. July 25, 2025) ("[E]ssentially all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, 'will—at some point—violate the right to due process.'" (quoting *Martinez v. Clark*, No. C18-1669-RAJ-MAT, 2019 WL 5968089, at *6 (W.D. Wash. May 23, 2019), *report and recommendation adopted,* No. 18-CV-01669-RAJ, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019))); *Kydyrali v. Wolf*, 499 F. Supp. 3d 768, 772 (S.D. Cal. 2020) ("[T]he Court joins the majority of courts across the country in concluding that an unreasonably prolonged detention under 8 U.S.C. § 1225(b) without an individualized bond hearing violates due process."); *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1116–17 (W.D. Wash. 2019).

Respondents rely on two cases to support their argument that § 1225(b)(1) and its provision for mandatory detention provides all the process that Petitioner is due. *See* ECF No. 5 at 7–8 (citing *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020), and *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953)). However, the Court is not persuaded.

In *Thuraissigiam*, the habeas petitioner argued that the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 violated "his right to due process by precluding judicial review of his allegedly flawed credible-fear proceeding." *Thuraissigiam*, 591 U.S. at 138. The Supreme Court found that the petitioner, as an applicant for admission, was provided "the right to a determination whether he had a significant possibility of establishing eligibility for asylum" pursuant to § 1225(b), and that he had "only those rights regarding admission that Congress has provided by statute." *Id.* at 140 (internal quotation marks and brackets omitted) (quoting §§ 1225(b)(1)(B)(ii), (v)). The Court finds *Thuraissigiam* addressed a noncitizen's right to challenge *admission*, not detention. *See, e.g.*, *Sadeqi*, 2025 WL 3154520, at *2 ("This Court likewise agrees with those district courts that interpret *Thuraissigiam* as circumscribing an arriving alien's due process rights to *admission*, rather than limiting that person's ability to challenge *detention*."); *Aviles-*

*Mena v. Kaiser*, No. 25-CV-06783-RFL, 2025 WL 2578215, at *4 (N.D. Cal. Sept. 5, 2025) (finding *Thuraissigiam* inapplicable to cases challenging detention).

The Court also finds *Mezei* distinguishable. *Mezei* involved a noncitizen who had been "permanently excluded from the United States on security grounds but stranded in his temporary haven on Ellis Island because other countries [would] not take him back." *Mezei*, 345 U.S. at 207. The Supreme Court recognized Mezei's exclusion for security reasons as different from noncitizens who may be released from detention on bond. *Id.* at 216 ("An exclusion proceeding grounded on danger to the national security, however, presents different considerations; neither the rationale nor the statutory authority for such release exists."). The facts are significantly different because Petitioner has not been excluded as a security risk and does not have a final order of removal. *See Rosales-Garcia v. Holland*, 322 F.3d 386, 413–14 (6th Cir. 2003) ("[T]he *Mezei* Court explicitly grounded its decision in the special circumstances of a national emergency and the determination by the Attorney General that Mezei presented a threat to national security."); *Kydyrali*, 499 F. Supp. 3d at 772 (finding *Mezei* inapposite to issue of whether prolonged detention without a bond hearing violates due process).

Petitioner contends that the six-factor balancing test articulated in *Banda v. McAleenan*, 385 F. Supp. 3d 1099 (W.D. Wash. 2019) demonstrates that his detention violates his due process rights. Pet. ¶¶ 29–46. Respondents argue that applying those factors shows that Petitioner's detention is not unconstitutional. ECF No. 5 at 9–10.

In *Banda*, the court considered the following factors to determine whether prolonged mandatory detention under § 1225(b) in a particular case violates the Due Process Clause: "(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal." *Banda*, 385 F. Supp. 3d at 1118 (quoting *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858–59 (D. Minn. 2019)).

First, the length of detention, which is the most important factor, weighs in Petitioner's favor as Petitioner has been detained for approximately seven months without a bond hearing. This length is commensurate with what federal district courts in California have found warrants a bond hearing under the Due Process Clause. *See, e.g., Marco Antonio B.R. v. Warden of Golden State Annex Detention Facility*, No. 1:26-cv-0810-TLN-CSK, 2026 WL 1091489 (E.D. Cal. Apr. 22, 2026) (holding petitioner detained for five months without a bond hearing was likely to succeed on claim that continued prolonged detention is unconstitutional); *Yagoub v. LaRose*, No. 3:26-cv-00914 JLS-JLB, 2026 WL 673799, at *2 (S.D. Cal. Mar. 10, 2026) (finding detention of "nearly eight months" without a bond hearing weighed in petitioner's favor); *Amado v. United States Dep't of Just.*, No. 3:25-cv-02687-LL-DDL, 2025 WL 3079052, at *5 (S.D. Cal. Nov. 4, 2025) (explaining that "[c]ourts have found detention over seven months without a bond hearing weighs toward a finding that it is unreasonable" and collecting cases).

Next, the Court finds that the likely duration of future detention also weighs in favor of Petitioner. Here, Petitioner's immigration case is currently on appeal with the BIA. Pet. ¶ 23. If the BIA affirms, petitioner will have the opportunity seek review in the Ninth Circuit. These appeals can take a long time. *See Banda*, 385 F. Supp. 3d at 1119 (finding appeal of removal order with the BIA and review in the Ninth Circuit "may take up to two years or longer"). Petitioner's position is just as likely to lead to further prolonged detention as the petitioner in *Banda*, where there was a final removal order from an IJ and he had just filed an appeal to the BIA. *See id.* The *Banda* court concluded that this factor favored the petitioner under those circumstances, and the Court finds the same here.

Third, courts consider the conditions of detention. "The more that the conditions under which the [noncitizen] is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Banda*, 385 F. Supp. 3d at 1119 (second alteration in original) (citation omitted). Petitioner is detained at OMDC, and courts have found confinement at OMDC is "indistinguishable from penal confinement." *Kydyrali*, 499 F. Supp. 3d at 773; *Gao v. LaRose*, 805 F. Supp. 3d 1106, 1111 (S.D. Cal. 2025)

("[C]onditions of confinement at Otay Mesa Detention Center are not dissimilar to criminal confinement"). The Court finds this factor weighs in favor of Petitioner.

The fourth and fifth factors concern delays in the removal proceedings caused by Petitioner or the Respondents. Petitioner does not state any delays caused by the government. *But see Roka v. Noem*, No. 3:26-CV-00788-JES-MMP, 2026 WL 926915, at *4 (S.D. Cal. Apr. 6, 2026) (finding that IJ reassignments that drove the recent delay of the petitioner's merits hearing weighed against the government). The Court finds no showing that either side has caused undue delays, so these factors are neutral.

Lastly, when considering the "likelihood that the removal proceedings will result in a final order of removal," the Court considers "whether the noncitizen has asserted any defenses to removal." *Banda*, 385 F. Supp. at 1120 (citations omitted). Here, an IJ has already ordered Petitioner removed to Uganda. ECF No. 5 at 2. In response, Petitioner filed a BIA appeal challenging the IJ's denial of his claims for relief. Pet. ¶ 23. Determining the outcome of Petitioner's immigration proceedings will require an individualized, fact-intensive analysis. The Court is, however, in no position to assess the merits of his claim for relief, at this stage or on this record. Thus, the Court finds this factor is neutral.

Considering all the factors, the Court finds Petitioner's mandatory detention under § 1225(b) has become unreasonable and that due process requires that he be provided with a bond hearing. *See Rodriguez v. Robbins*, 715 F.3d 1127, 1144 (9th Cir. 2013) ("[W]e note that the discretionary parole system available to § 1225(b) detainees is not sufficient to overcome the constitutional concerns raised by prolonged mandatory detention."). Accordingly, the Court **GRANTS** the Petition.

## IV. CONCLUSION

For the reasons above, the Court **GRANTS** Petitioner's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 and **ORDERS** as follows:

1. Respondents **SHALL** provide Petitioner with an individualized bond hearing before a neutral immigration judge within **seven (7) days** of this Order, unless Petitioner requests a continuance.

a. At the hearing, the government **SHALL BEAR** the burden of establishing by clear and convincing evidence that the noncitizen is a danger to the community or a flight risk if released (*See Singh v. Holder*, 638 F.3d 1196, 1200, 1203 (9th Cir. 2011));

b. The IJ **SHALL** consider alternative conditions of release and the noncitizen's ability to pay bond if he or she determines bond is appropriate; and

c. The government **SHALL** make a complete record of the bond hearing available to the noncitizen and his counsel.

2. The Clerk of Court shall enter judgement in Petitioner's favor and close this case.

**IT IS SO ORDERED**.

Dated: August 25, 2026

Honorable Linda Lopez
United States District Judge